UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO LARUE, | No. 2:20-cv-00693 WBS CKD P |
| Petitioner, | |
| v. | FINDINGS & RECOMMENDATIONS |
| GIGI MATTESON, | |
| Respondent. | |

I. Introduction

Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2017 conviction for two counts of second degree robbery. Petitioner was sentenced to 16 years in state prison. Petitioner raises two claims in his habeas petition: (1) the trial court failed to grant a juror's request to be removed during deliberations, and (2) the trial court failed to advise him of his constitutional rights before he admitted prior convictions. After reviewing the record, this Court concludes that the petition should be denied.

II. Procedural History

On April 14, 2017, a jury found petitioner guilty of two counts of second degree robbery. (ECF No. 13-2 at 387-89.) The trial court sentenced him to 16 years in state prison. (Id. at 400.)

Petitioner filed a direct appeal, and the California appellate court remanded for

1

resentencing on an enhancement issue but otherwise affirmed the judgment. (ECF No. 13-9; see also ECF No. 13-11.) Petitioner subsequently filed a petition in the California Supreme Court, which the court denied. (ECF No. 13-10.)

Petitioner filed the instant petition in March 2020. (ECF No. 1.) Respondent filed an answer in August 2020. (ECF Nos. 13 & 14.) Petitioner did not file a traverse.

III. Facts[1]

After independently reviewing the record, this Court finds the appellate court's summary accurate and adopts it herein.[2] In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal provided the following factual summary:

### I. BACKGROUND

***A. 2016 Grocery Store Robbery***

> On October 4, 2016, David and Michael were working as loss prevention agents at a grocery store. They noticed defendant carrying a backpack in his hand in the liquor aisle. They both saw defendant put a bottle of liquor into his backpack. They also heard what sounded like glass bottles inside the backpack.
>
> The agents eventually approached defendant, told him they were security for the store, and asked him to remove the bottles from his backpack. The store puts security caps on all liquor bottles. The caps are removed at the register after the customer purchases the bottle. Defendant removed one bottle from his bag, but it did not have a security cap on it. Michael placed this bottle on the shelf. There were two other bottles in defendant's backpack that had a security cap on them, but he refused to take them out and claimed they were his bottles that he got from another store. Michael attempted to grab the backpack. Defendant was holding a screwdriver. The agents told defendant, "the screwdriver is like a weapon ... you need to drop it." Defendant said the screwdriver was not a weapon and handed it to Michael. Defendant then said, "you want to see a real weapon?" or "if I want to pull a weapon, I'll pull this." He pulled a meat thermometer out of his backpack. Michael laughed and asked defendant what he was doing. Defendant took the black sleeve off the thermometer and put the part that displays the temperature inside

---

[1] The facts are from the opinion of the California Court of Appeal for the Third Appellate District in People v. Larue, C0844929, 2019 WL 71873 (Cal. Ct. App. Feb. 20, 2019), a copy of which was lodged by respondent as ECF No. 13-9.

[2] See 28 U.S.C. § 2254(e)(1) (emphasizing that "a determination of a factual issue made by a State court shall be presumed to be correct" unless the petitioner rebuts it by clear and convincing evidence).

2

his fist and the pointed end that inserts into the meat facing out. The pointed end appeared sharp enough to puncture skin.

Michael and David backed away, but there was not a lot of room to do so. David was still within close range of defendant.

David was concerned for his safety and backed up to avoid being stabbed. David was not sure of defendant's intentions when he first pulled out the meat thermometer, but he did not appear to be joking. David thought the backpack was on the ground at this point, but it was still within defendant's reach and still had two bottles of liquor inside. David saw defendant pick up the backpack and proceed to leave the store.

When Michael initially attempted to take defendant's backpack, he saw defendant take a fighting stance. David told defendant to put the meat thermometer away. He did not. Michael saw defendant take a step toward David. Michael tried to grab defendant's arms to restrain him. When Michael failed, he put his right arm underneath defendant's chin so that defendant was looking at the ceiling. Then, Michael used his left hand to knock the meat thermometer out of defendant's hand and onto the floor.

Michael testified that, at this point, the backpack was on the ground. Michael thought that after defendant pulled out the meat thermometer, Michael had removed the backpack and handed it to David, who placed it on the ground.

Two sheriff's deputies who reviewed the store's surveillance video with the loss prevention agents testified regarding what the video showed. They testified that defendant took at least one bottle of liquor and placed it into his backpack. One deputy testified that defendant appeared to use the meat thermometer to keep the loss prevention agents away from him. He held it out in front of him and waved it back and forth a little bit. The agents backed away. The parties stipulated, in effect, that their efforts to obtain a copy of the surveillance video were unsuccessful.

**B. 2013 Department Store Incident**

A loss prevention officer for a department store testified that on September 24, 2013, he saw defendant enter the shoe department and begin looking for shoes. Defendant removed a pair of shoes from their box, pulled a pair of wire cutters out of his pocket, and cut the security device off of the shoes. He stuffed the shoes into his waistband and left the store without paying. Once he was outside the store, the officer asked defendant to go back inside and speak to him about the shoes. Defendant said he did not take anything, but if the officer touched him, he would "fuck [him] up." Defendant reached into his pocket and pulled out the wire cutters. The officer stepped away and told defendant he was going to call the police. Defendant threw the shoes on the ground and left.

(ECF No. 13-9 at *2-4.)

IV. Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal writ of habeas corpus is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

28 U.S.C. § 2254(d) sets forth the following limitation on the granting of federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different, as the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (internal citations omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

4

1  Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652,
2  664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a
3  state prisoner must show that the state court's ruling on the claim being presented in federal court
4  was so lacking in justification that there was an error well understood and comprehended in
5  existing law beyond any possibility for fairminded disagreement."  Id. at 103.

6       The court looks to the last reasoned state court decision as the basis for the state court's
7  judgment.  Stanley v. Cullen, 633 F.3d 852, 859-60 (9th Cir. 2011).  The California Court of
8  Appeal's decision on direct appeal is the last reasoned state court decision with respect to
9  petitioner's claims.  (ECF No. 13-9.)  Petitioner bears the "burden to demonstrate that 'there was
10 no reasonable basis for the state court to deny relief.'"  Walker v. Martel, 709 F.3d 925, 939 (9th
11 Cir. 2013) (quoting Richter, 562 U.S. at 98).

12 V.  Petitioner's Claims

13      A.  Claim One: Failure to Remove Juror No. 9

14      Petitioner claims that the state court failed to protect Juror No. 9 after she requested to be
15 removed from the jury.  (ECF No. 1 at 5, 8-13; see also ECF No. 13-4 at 50-57 (arguing that the
16 trial court abused its discretion by failing to declare a hung jury and asking for further jury
17 deliberations despite juror no. 9's removal request).)  Respondent contends that this claim is
18 unexhausted or procedurally defaulted and fails on the merits.  (ECF No. 14 at 4-9.)

19      The state appellate court considered the claim and concluded that defendant forfeited the
20 claim by failing to object in trial court:

> ***1. Trial Court Proceedings***
>
> After less than a day of deliberations, the jury sent a note declaring they were at an impasse. Outside the presence of the jury, the court indicated that it would give the jury a supplemental instruction taken from our decision in *People v. Moore* (2002) 96 Cal.App.4th 1105. Defense counsel objected to the giving of the instruction: "I believe they have been deliberating as long as the evidence that they received. So I don't see a basis. At this point[,] I think any instruction pressures them into reaching a verdict that they may not be comfortable with." The court explained that "this jury has requested absolutely nothing. They have not asked a question. They have not asked for read back. They have not asked for any kind of clarification. [¶] ... [U]nfortunately we were not able to be in session on Monday and Tuesday.... And so I think that the passage of time

> may be a factor here in causing this jury not to be able to come to a decision. But, in any event, the Court is satisfied that it would be appropriate under these circumstances to give what is an approved instruction to these jurors." The court did so. The jury resumed deliberations at 1:35 p.m. and requested read back of the testimony of three witnesses at 3 p.m. The following morning, Juror No. 9 delivered a note to the bailiff requesting to be excused from the jury, explaining, "I feel that I am being pressured, even ganged up upon, to vote a certain way." Outside the presence of the other jurors, the court questioned Juror No. 9 about her willingness to deliberate further, and questioned the foreperson about the potential usefulness of further deliberations. Defense counsel interposed no objections. Deliberations continued and the jury reached its verdict.
>
> ### *2. Forfeiture*
>
> On appeal, defendant argues the trial court erred in failing to protect Juror No. 9 from the other jurors when she asked to be removed from the jury. Defendant's claim is forfeited by his failure to object in the trial court. (*People v. Russell* (2010) 50 Cal.4th 1228, 1250 ["[D]efendant's claim that the court's questions of Juror No. 8 constituted reversible error because they were improper, intrusive, and coercive is forfeited because defendant failed to object"]; *People v. Cain* (1995) 10 Cal.4th 1, 55 [defendant waived claim that trial court's instructions to the reconvened jury in effect directed the jury to return a verdict of first degree murder by failing to object].) Defendant claims his objection to the giving of the supplemental instruction to the deadlocked jury preserved this argument for appeal because it was an objection to the same error—ordering the jury to continue deliberating. Despite this framing of his argument, his opening brief actually contends the court coerced Juror No. 9 to change her vote by refusing to dismiss her, and that the court's comments to Juror No. 9 and the foreman were "a clear directive to Juror 9 to change and to the foreman to effectuate Juror 9 to change." Defense counsel's objection to the supplemental instruction did not fairly alert the trial court to defendant's concerns regarding the trial court's handling of Juror No. 9's request. Additionally, in overruling the initial objection to the supplemental instruction and ordering the jury to continue deliberating, the trial court noted a number of factors that no longer applied by the time it spoke to Juror No. 9. Defendant's claims related to this exchange are forfeited.

(ECF No. 13-9 at 9-11.)

Although procedural issues are often addressed before the merits, they need not be. A federal court may deny a habeas petition on the merits notwithstanding the petitioner's failure to exhaust remedies. 28 U.S.C. § 2254(b)(2). As to procedural bar, the Supreme Court in Lambrix v. Singletary, 520 U.S. 518 (1997) skipped over the procedural bar argument and proceeded to the merits. Id. at 525 ("Despite our puzzlement at the Court of Appeals' failure to resolve this case on the basis of procedural bar, we hesitate to resolve it on that basis ourselves."); see also

Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) (stating that courts may "reach the merits of habeas petitions if they are, on their face and without regard to any facts that could be developed below, clearly not meritorious despite an asserted procedural bar."). "Procedural bar issues are not infrequently more complex than the merits issues" and "it may well make sense in some instances to proceed to the merits if the result will be the same." Franklin, 290 F.3d at 1232; see, e.g., Dean v. Schriro, 371 F. App'x 751 (9th Cir. Mar. 17, 2010). Because this claim can be resolved on the merits, this Court declines to decide whether exhaustion or procedural bar precludes petitioner from obtaining habeas relief.

On the merits, the Supreme Court has held that a trial judge may instruct a deadlocked jury about its duty to deliberate, but it may not force or coerce a verdict. See Allen v. United States, 164 U.S. 492, 501 (1896); see also Jenkins v. United States, 380 U.S. 445 (1965) (per curiam); Lowenfield v. Phelps, 484 U.S. 231, 241 (1988); Early v. Packer, 537 U.S. 3, 6 (2002) (per curiam); see also Harrison v. Gillespie, 640 F.3d 888, 902 n.12 (9th Cir. 2011) (en banc); Smith v. Curry, 580 F.3d 1071, 1073 (9th Cir. 2009); United States v. Williams, 547 F.3d 1187, 1205 (9th Cir. 2008). To determine whether the trial court's supplemental instruction infringed on a criminal defendant's due process rights, courts consider whether the trial court's "actions and statements were coercive in the totality of the circumstances." Jiminez v. Myers, 40 F.3d 976, 980 (9th Cir. 1993) (per curiam). The Ninth Circuit has considered the following four factors in this inquiry: "1) the form of the jury charge, 2) the amount of time of deliberation following the charge, 3) the total time of deliberation and, 4) other indicia of coerciveness or pressure." Weaver v. Thompson, 197 F.3d 359, 366 (9th Cir. 1999); see also Rogers v. Galaza, 90 F. App'x 206, 208 (9th Cir. 2004). On habeas review, this Court must determine whether the state appellate court could have reasonably concluded that the trial court's supplemental instruction was not coercive based on the totality of the circumstances.

Here, petitioner fails to show that no fairminded jurist could possibly conclude that the supplemental instruction was not coercive. After a day of deliberations, the trial court indicated to the attorneys that it would like "to give the jury an approved instruction from the Court of Appeal that encourages them, if possible, to attempt to come to some kind of an agreement in this

7

1  case." (ECF No. 13-2 at 361.) Defense counsel objected, arguing that any instruction may
2  pressure them into reaching a verdict. (Id. at 362.) The judge called in the jury, and the
3  foreperson told the court that the jury had taken 12 votes and the votes were trending towards a
4  unanimous vote. (Id. at 364.) The trial court then provided a supplemental instruction, a portion
5  of which is excerpted below:

> Your goal as jurors should be to reach a fair and impartial verdict if you are able to do so based solely on the evidence presented and without regard for the consequences of your verdict regardless of how long it takes to do so. It is your duty as jurors to carefully consider, weigh, and evaluate all of the evidence presented at the trial, to discuss your views regarding the evidence and to listen to and consider the views of your fellow jurors.
>
> In the course of your further deliberations you should not hesitate to reexamine your own views or to request your fellow jurors to reexamine theirs. You should not hesitate to change a view you once held if you are convinced it is wrong or to suggest other jurors change their views if you are convinced they are wrong. Fair and effective jury deliberations require a frank and forthright exchange of views.
>
> As I have previously instructed you, each of you must decide the case for yourself and you should do so only after a full and complete consideration of all of the evidence with your fellow jurors. It is your duty as jurors to deliberate with a goal of arriving at a verdict on the charges if you can do so without violence to your individual judgment.

17  (Id. at 365-66.) The trial judge did not put time pressure on the jury to reach a verdict. See
18  Lowenfield, 484 U.S. at 240 (noting that a jury returning a verdict soon after a supplemental
19  instruction suggests a possibility of coercion). To the contrary, the trial judge instructed that the
20  jurors should attempt to reach a fair and impartial verdict "regardless of how long it takes to do
21  so." (Id. at 365.) The trial court also did not instruct that the jury must reach a verdict, Jenkins,
22  380 U.S. at 446, and did not directly address minority jurors, Lowenfield, 484 U.S. at 237-38.
23  Although the trial court knew the numerical division of the some of the prior votes on the merits
24  of the case, after the supplemental instruction, the jury did not return the verdict in a short
25  timeframe. Under the totality of the circumstances, the state court could have reasonably
26  determined that the instruction was not coercive. Habeas relief is not warranted.
27        To the extent petitioner argues that the trial court violated his due process rights by failing
28  to grant juror no. 9's request for removal, this claim also fails. After speaking with the juror no. 9

1  apart from the rest of the jury, the trial court asked if she would be willing to continue
2  deliberating, and the juror said yes. (ECF No. 13-2 at 373.) The trial court did not provide any
3  additional instructions. After further deliberations, the jury reached a unanimous verdict, which
4  juror no. 9 agreed to. (Id. at 386-89.) To the extent petitioner argues that a unanimous verdict
5  necessarily proves that fellow jurors pressured juror no. 9 into a guilty verdict, there is no
6  evidence of such coercion. "The very object of the jury system is to secure unanimity by a
7  comparison of views, and by arguments among the jurors themselves." Allen, 164 U.S. at 501.
8  "While, undoubtedly, the verdict of the jury should represent the opinion of each individual juror,
9  it by no means follows that opinions may not be changed by conference in the jury room." Id.
10 The mere fact that one or more jurors may have changed their opinions and agreed to a guilty
11 verdict does not suggest coercion, nor does it state a cognizable claim on federal habeas review.

### B.  Claim Two: Admission of Prior Convictions

Next, petitioner claims that the state court erred in failing to advise him that he would be waiving his rights before he admitted his prior convictions. (ECF No. 1 at 5, 15-20.) He claims that under California Penal Code section 667.71 and Boykin v. Alabama, 395 U.S. 238 (1969) he was entitled to either a valid admission of the prior convictions or a jury finding on the prior convictions. Respondent contends that the state court's rejection of petitioner's claim was reasonable. (ECF No. 14 at 9-10.)

On the merits, this Court looks to the last reasoned state court decision in applying the 28 U.S.C. § 2254(d) standard. Wilson v. Sellers, 138 S. Ct. 1188, 1191-92 (2018); see also Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991) (establishing the "look through" doctrine in federal habeas cases). The state appellate court considered and rejected petitioner's claim.

#### *1. Trial Court Proceedings*

After the jury reached its verdict, but before it was read, defense counsel indicated that she "had a significant amount of time to discuss [the] issue" with defendant and he wanted to admit his priors.

The court confirmed this with defendant:

"THE COURT: All right. Is that what you desire to do, [defendant], is go ahead and admit the priors that the People have alleged in this information?

9

"THE DEFENDANT: Yes.

"THE COURT: You understand that you have a right to a jury trial to decide whether or not [the prosecutor] can prove beyond a reasonable doubt that you have been convicted of these prior offenses? [¶] Do you understand that?

"THE DEFENDANT: Yes.

"THE COURT: That would be the same jury that is and has been deliberating on this case. [¶] Do you understand that?

"THE DEFENDANT: Yes.

"THE COURT: And by admitting these offenses you are waiving your right to a trial by jury on these convictions. [¶] Do you understand that?

"THE DEFENDANT: Yes.

"THE COURT: Do you have any questions for the Court in that regard?

"THE DEFENDANT: No."

The court explained the consequences of admitting the priors: "[T]he first prior conviction is alleged as a serious or violent felony. [¶] Okay. So the way the People have pled it, they didn't plead it actually as a strike. They pled it as a five-year prior. [¶] The next convictions we're gonna talk about are alleged as one year priors. [¶] Meaning that when you are—if you are sentenced in this case and when you are sentenced, you would be sentenced to an additional year on each prior conviction. [¶] Other than the first one, which is a five-year prior—

"THE DEFENDANT: Could I ask you a question?

"THE COURT: Ask your attorney first."

Back on the record, the trial court added: "We can easily do a trial on the priors. It's not an issue before the Court.

"THE DEFENDANT: I'm baffled, and you got to excuse me. I apologize.

"THE COURT: Okay.

"THE DEFENDANT: This is hard for me to grab onto right now.

"THE COURT: I—

"THE DEFENDANT: What I did and being convicted of is two totally different things.

"THE COURT: And I understand that's been your information from

10

day one in this case. [¶] So I just need to know, you've already indicated that you don't want the jury to make this decision as to your prior convictions. [¶] You've indicated that you just want to admit them and so we just have to go down the road and you either admit or deny. [¶] If you deny these prior convictions, then we'll do a trial on it. We can do a Court trial on it or we can have a jury trial on it or you can admit. Those are your three options and [defense counsel] indicated you do.

"THE DEFENDANT: Yes, I plead no contest to that.

"THE COURT: Okay. So let[']s start with the top. [¶] It's alleged on June 13th, 1990[,] in the County of San Francisco you were convicted of the crime of second degree robbery in violation of Section 122—212.5 of the Penal Code, that is a serious felony. [¶] Do you admit or deny that prior conviction?

"THE DEFENDANT: I admit.

"THE COURT: Prior conviction number two indicates that on December 2nd, 1997, in the Superior Court, County of Sacramento, you were convicted of the crime of driving a stolen vehicle in violation of Section 120851 [*sic* ] of the Vehicle Code and that you served a separate term in state prison and that you did not remain free of prison custody or you committed an offense resulting in another felony conviction during a period of five years subsequent to that term. [¶] Do you admit or deny that prior conviction?

"THE DEFENDANT: I admit the conviction.

"THE COURT: Prior conviction number three indicates that on December 12th, [2002], in the Superior Court, County of Sacramento you were convicted of the crime of possessing stolen property in violation of Section 496 of the Penal Code. [¶] That you served a separate term in state prison and that you did not remain free of prison custody or you committed an offense resulting in a felony conviction during a period of five years subsequent to the conclusion of that term. [¶] Do you admit or deny that prior conviction?

"THE DEFENDANT: Excuse me. You—from the vehicle theft to the possession of stolen property did I—you asked if I committed a felony?

"THE COURT: I'm just indicating that's what the prior conviction is. [¶] If you have a question, you can ask your attorney.

"THE DEFENDANT: I heard wrong. [¶] Can you repeat that, please?

"THE COURT: Prior conviction number three, on December 12th, 2002, in the Superior Court, County of Sacramento, you were convicted of the crime of possessing stolen property in violation of Section 496 of the Penal Code. [¶] That you served a separate term in state prison for that offense and you did not remain free of prison custody or you committed an offense resulting in a felony conviction during a period of five years after the conclusion of that term. [¶] Do

11

1  you admit or deny that prior conviction?

2  "THE DEFENDANT: Okay. I—I understand that. Yeah, I admit that. I admit.

3

4  "THE COURT: Okay. Prior conviction number four, on April 26th, 2010, in the Superior Court, County of Sacramento, you were convicted of the crime of possessing a dangerous weapon in violation of Section 12020[, subdivision (a) ] of the Penal Code. [¶] That you served a separate term in state prison for that offense and that you did not remain free of prison custody or you committed an offense resulting in a felony conviction during a period of five years after the conclusion of that term. [¶] Do you admit or deny that prior conviction?

5

6

7

8

"THE DEFENDANT: I admit it.

9

10  "THE COURT: Prior conviction number five alleged that on June 16th, 2014[,] in the Superior [C]ourt, County of Sacramento, you were convicted of the crime of petty theft with priors in violation of Section 666 of the Penal Code. [¶] That you did serve a separate term in state prison for that offense and that you did not remain free of prison custody or you committed an offense resulting in a felony conviction during a period of five years after that term. [¶] Do you admit or deny that prior conviction?

11

12

13

14  "THE DEFENDANT: Now, seeing that this one was cleaned up, is this really what it is?

15

16  "THE COURT: We—that is a question that the Supreme Court has in front of it at this time. [¶] I can tell you that if you get convicted of a felony in this case, it is very doubtful that I'm going to impose this prior constriction on you. [¶] Do you admit or deny that prior conviction?

17

18

19  "THE DEFENDANT: I admit.

20  "THE COURT: Okay. Prior conviction number six, on May 25th, 2016, in the Superior Court of the County of Sacramento, you were convicted of the crime of violating a Court Order in violation of Section 166[, subdivision (c)(4) ] of the Penal Code and that you served a separate term in state prison for that offense and that you did not remain free of prison custody or you committed an offense resulting in a felony conviction during a period of five years after the conclusion of that term. [¶] Do you admit or deny that prior conviction?

21

22

23

24

25  "THE DEFENDANT: I admit.

26  "THE COURT: All right. I do find that the defendant knowingly and intelligently and voluntarily waived his trial to a prior before this jury and has entered admissions as to each and every prior conviction."

27  ////

28  ////

12

### *2. Whether Waivers Were Voluntary and Intelligent*

Before a trial court may accept a defendant's plea of guilty to an offense, the court is required to advise the defendant, and obtain the defendant's voluntary and intelligent waivers, of his or her rights to be tried by jury, to remain silent, and to confront adverse witnesses. This must be done on the record. (*Boykin v. Alabama* (1969) 395 U.S. 238, 242-244; *In re Tahl* (1969) 1 Cal.3d 122, 132.) In *In re Yurko* (1974) 10 Cal.3d 857 (*Yurko*), our Supreme Court held admission of a prior conviction requires the same waivers as a guilty plea. (*Id.* at p. 863.) Our Supreme Court also held in *Yurko*, " 'as a judicially declared rule of criminal procedure' that an accused, before admitting a prior conviction allegation, must be advised of the precise increase in the prison term that might be imposed, the effect on parole eligibility, and the possibility of being adjudged a habitual criminal.' " (*People v. Cross* (2015) 61 Cal.4th 164, 170-171, quoting *Yurko, supra*, at p. 864.)

"*Yurko* error is not reversible per se." (*People v. Cross*, *supra*, 61 Cal.4th at p. 171.) "[I]f the transcript does not reveal complete advisements and waivers, the reviewing court must examine the record of 'the entire proceeding' to assess whether the defendant's admission of the prior conviction was intelligent and voluntary in light of the totality of circumstances." (*People v. Mosby* (2004) 33 Cal.4th 353, 361 (*Mosby*).) "The focus is not on whether a prior would have been found true, but on whether the defendant knew of his constitutional rights." (*People v. Stills* (1994) 29 Cal.App.4th 1766, 1770.)

As set forth above, the trial court committed *Yurko* error by failing to advise defendant of his rights to remain silent and to confront witnesses. The People argue the error was harmless.

In *Mosby, supra,* 33 Cal.4th 353, our Supreme Court held that the court of appeal did not err in concluding, under the totality of the circumstances, that the "defendant voluntarily and intelligently admitted his prior conviction despite being advised of and having waived only his right to jury trial." (*Id.* at p. 365.) The Supreme Court noted that the "defendant, who was represented by counsel, had *just* undergone a jury trial at which he did not testify, although his codefendant did. Thus, he not only would have known of, but had just exercised, his right to remain silent at trial .... And, because he had, through counsel, confronted witnesses at that immediately concluded trial, he would have understood that at a trial he had the right of confrontation." (*Id.* at p. 364.) Defendant contends *Mosby* is distinguishable because he admitted the priors before hearing the jury's verdict, he had questions for the court, and was not told his admissions would subject him to a 16-year sentence. We disagree. For these purposes, there is no meaningful difference between admitting priors just before the jury's verdict was read instead of just after. The critical point is defendant had just undergone a jury trial at which he exercised his right to remain silent and confronted witnesses through his counsel. (See *ibid.*) In addition, " 'a defendant's prior experience with the criminal justice system' is ... 'relevant to the question [of] whether he knowingly waived

13

> constitutional rights.' " (*Ibid.*) At sentencing, defendant stated that he "should [have] addressed the jury." The trial court responded, "You're very familiar with the criminal justice system. And I know you understood clearly the upsides and downsides to testifying, and you made that decision on your own. And so that's something you have to live with at this point in time." The trial court also added, "you have one of the lengthier records I've seen in a very, very long time. You've basically not spent more than a year out of custody since 1990." We disagree with the suggestion that the trial court did not adequately advise defendant of the consequences of admitting his priors. The trial court explained how many years each admission would add to his sentence. (See *Yurko, supra,* 10 Cal.3d at p. 864 [defendant must be advised of "the precise increase in the term or terms which might be imposed"].) As for defendant's questions, the record reflects they were resolved and they did not relate to his constitutional rights. To the extent they related to the punishment for priors that had been reduced to misdemeanors, as we discuss next, those enhancements will be stricken. The totality of the circumstances indicate defendant's admissions were made intelligently and voluntarily.

(ECF No. 13-9 at 11-17.)

Federal habeas relief is only available for violations of federal law. 28 U.S.C. § 2254(a). Conversely, alleged errors in the application of state law do not warrant federal habeas relief. Wilson, 562 U.S. at 5; Estelle, 502 U.S. at 67-68. Although criminal defendants have the right to certain advisements before admitting prior convictions under California law, In re Yurko, 10 Cal. 3d 857, 860 (1974), no such right exists in federal law. In Boykin v. Alabama, 395 U.S. 238 (1969), the Supreme Court held that a court cannot presume that a criminal defendant voluntarily and intelligently waived his rights against compulsory self-incrimination, to trial by jury, and to confront witnesses when entering a guilty plea based on a silent record. Boykin, 395 U.S. at 243. The Supreme Court has not extended the Boykin holding to admitting prior convictions.[3] Furthermore, the Ninth Circuit has recognized that there is a circuit split on this issue. See Adams v. Peterson, 968 F.2d 835, 841 n.4 (9th Cir. 1992) (en banc). Because the Supreme Court has not provided a clear answer to the issue presented, this Court cannot conclude that the state

---

[3] As to the right to a jury trial, one of the Boykin admonishments, the Supreme Court has held that a criminal defendant does not have this right for purposes of determining the existence of a prior conviction. See Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.").

court unreasonably applied clearly established federal law. See Wright v. Van Patten, 552 U.S. 120, 125-26 (2008) (per curiam). Even if petitioner could establish that the state court unreasonably applied clearly established federal law, petitioner has not shown that the error created a substantial and injurious effect on the trial's outcome. See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); see also Brown v. Davenport, 142 S. Ct. 1510, 1517 (2022). Petitioner does not dispute the validity of his prior convictions or that the prosecution would have been unable to prove them. See Lowell v. Prunty, 91 F.3d 1358, 1359 (9th Cir. 1996) (per curiam); see also Watson v. Fairman, 97 F. App'x 177 (9th Cir. 2004); Penn v. Roe, 54 F. App'x 280, 281 (9th Cir. 2003). Habeas relief is not warranted on this claim either.

## VI. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why, and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 9, 2023

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

20/laru0693.hab